**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RENA NICHOLSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-1373 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| NATIONSTAR MORTGAGE LLC | ) | |
| OF DELAWARE, | ) | |
| | ) | |
| Defendant. | ) | |

———————————————————————

| | | |
|---|---|---|
| JAMES K. TOLFORD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-8737 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| NATIONSTAR MORTGAGE LLC | ) | |
| d/b/a CHAMPION MORTGAGE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

———————————————————————

| | | |
|---|---|---|
| MICHAL M. STANKIEWICZ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-3075 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| NATIONSTAR MORTGAGE LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Currently before the Court are motions to stay proceedings in favor of a first-filed case

that have been filed by Defendant in each of three related cases: *Nicholson v. Nationstar*

*Mortgage LLC of Delaware*, 17-cv-1373 ("Nicholson Action") [24]; *Tolford v. Nationstar*

*Mortgage LLC*, 17-cv-8737 ("Tolford Action") [23]; and *Stankiewicz v. Nationstar Mortgage LLC*, 18-cv-3075 ("Stankiewicz Action") [18].[1]  For the reasons stated below, each of Defendant's motions to stay is granted.  The Nicholson Action, the Tolford Action, and the Stankiewicz Action are stayed pending the outcome of the first-filed action currently pending in the District Court for the District of Columbia.  The parties are directed to submit status reports to the Court on the D.C. Action every 90 days, beginning September 1, 2018.

I.    **Background**

These related actions bring putative class action claims against Defendant Nationstar Mortgage LLC ("Defendant") regarding Defendant's alleged practice, as a mortgage servicer, of charging mortgage borrowers unnecessary and unreasonable inspection fees in connection with mortgages that are purportedly in default.

A.    **The Nicholson Action**

The Nicholson Action was filed in February 2017 by Plaintiff Rena Nicholson ("Nicholson") against Defendant.  [See Nicholson Action, 3.]  Nicholson's complaint alleges as follows.  Nicholson, a homeowner residing in Chicago, Illinois, has had a home equity conversion loan ("HECM"), also known as a reverse mortgage, on her home since 2007.  [*Id.*, ¶ 40.]  A reverse mortgage is a type of home loan, typically made to older homeowners, that allows these individuals to borrow against the equity of their homes while keeping the title and continuing to live there.  [*Id.*, ¶ 6.]  This type of loan requires no monthly mortgage payments: payment is deferred until the homeowner passes away, sells her home, or moves out of her home. [*Id.*]  A reverse mortgage contract between a lender and borrower consists of a promissory note and a mortgage or deed of trust that sets out terms governing what the lender may do in the event

---

[1] The Tolford Action and the Stankiewicz Action were both transferred to this Court as related to the Nicholson Action in March 2018 and May 2018 respectively.

of a purported default. [*Id.*, ¶ 8.] One such term is that, in the event of a default, the mortgage servicer may inspect the home and ensure that it is occupied and in good condition. [*Id.*, ¶ 9.] Fees for conducting this inspection are payable by the reverse mortgage borrower by becoming additional debt of the borrower that bears interest. [*Id.*, ¶ 10.] However, the terms of reverse mortgage notes, as well as regulations promulgated by the Department of Housing and Urban Development ("HUD"), place limits on the number of inspections that can take place and the circumstances that must exist before these inspections can take place. Specifically, servicers may not assess inspection fees that are unnecessary or unreasonable; the shortest time period allowed between inspections is 25 days; multiple inspections are only allowed when the mortgaged property is verified as vacant; and importantly, no series of inspections may begin unless the mortgage is in default and the lender gives the borrower notice prior to the inspection. [*Id.*, ¶¶ 11–15.]

Nicholson's reverse mortgage was assigned to Defendant, doing business as Champion Mortgage Company, for servicing in 2012. [*Id.*, ¶ 42.] Nicholson alleges that Defendant, rather than adhering to these contractual requirements for conducting inspections on mortgages in default, has developed and used an automated process that systematically side-steps these inspection requirements in order to maximize the fees imposed on borrowers. [*Id.*, ¶ 17.] Specifically, Nicholson alleges that Defendant uses this automated process to target elderly homeowners who have purportedly defaulted on their reverse mortgages and charges them repeated and unreasonable inspection fees in order to increase its own profits. [*Id.*, ¶¶ 18–19.] These inspections for which borrowers are charged may not have actually occurred, according to Nicholson, and if they do occur they only last for a few seconds. [*Id.*] Nicholson alleges that Defendant ordered and allegedly conducted five inspections of her property in November 2016

without any prior notice, and then charged Nicholson for these inspections, thus adding to her indebtedness. [*Id.*, ¶¶ 43–51.] Nicholson brings claims against Defendant for breach of contract (Count I); unjust enrichment (Count II); and negligence in the alternative (Count III). [*Id.*, ¶¶ 65–86.] Nicholson brings this action on behalf of herself as well as a nationwide class and Illinois sub-class. The nationwide class is defined as "[a]ll residents of the United States of America who had a reverse mortgage serviced by Champion and whose accounts were assessed fees for property inspections for which the resident received no prior notice continuing through the date of final disposition of this action." [*Id.*, ¶ 55.]

**B.    The _Tolford_ Action**

The _Tolford_ Action was originally filed in Illinois state court before being removed to federal court in December 2017. [See _Tolford_ Action, 1.] Plaintiff James Tolford ("Tolford"), an Illinois resident, also brings class action claims against Defendant relating to Defendant's practice of assessing and collecting allegedly unreasonable inspection fees in connection with defaulted reverse mortgages. [See *id.*, 34.] Specifically, Tolford alleges that he entered into a reverse mortgage in 2002 that is serviced by Defendant (doing business as Champion Mortgage Company). [*Id.*, ¶¶ 17–20.] After Tolford allegedly defaulted on the reverse mortgage by failing to pay taxes and insurance on the mortgaged property, Defendant charged Tolford for numerous inspections of the property. [*Id.*, ¶¶ 21, 24.] According to Tolford, these property inspection charges violate the terms of his mortgage and HUD regulations because he was still occupying the property at the time. [*Id.*, ¶¶ 25–32.] These charged fees were added to Tolford's loan balance as items due and owing. [*Id.*, ¶ 33.] Tolford brings claims against Defendant on behalf of himself and others similarly situated for breach of contract (Count I); unjust enrichment in the

alternative (Count II); and violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2 (Count III). [*Id.*, ¶¶ 41–73.]

Tolford has defined two national classes and an Illinois sub-class for purposes of his class claims. For Count I, Tolford defines the putative national class as: "All persons who (1) within ten years prior to the filing of this foreclosure action, (2) had an FHA and/or HECM loan with Champion that was in default, (3) occupied the subject property during default, and (4) were charged inspection fees by Champion while still occupying the property." [*Id.*, ¶ 35(A).] For Count II, Tolford defines the putative national class as: "All persons who (1) within five years prior to the filing of this foreclosure action, (2) had an FHA and/or HECM loan with Champion that was in default, (3) occupied the subject property during default, and (4) were charged inspection fees by Champion while still occupying the property." [*Id.*, ¶ 35(B).]

### C.    The <u>Stankiewicz</u> Action

The <u>Stankiewicz</u> Action was also originally filed in Illinois state court before being removed to federal court in April 2018. [See <u>Stankiewicz</u> Action, 1.] Plaintiff Michal Stankiewicz ("Stankiewicz"), an Illinois resident, alleges that he entered into an FHA-insured mortgage (not a reverse mortgage) in 2009 that was assigned to Defendant in 2016. [See Stankiewicz Action, 1-1, ¶¶ 16–18.] A complaint for foreclosure was filed on this mortgage in 2014. [*Id.*, ¶ 21.] Stankiewicz has continually occupied the property since the mortgage was executed; however, according to Stankiewicz, Defendant has continually charged him for property inspections during the foreclosure process even though Defendant knew, or should have known, that he was occupying the property. [*Id.*, ¶¶ 23–26.] Stankiewicz alleges that this imposition of fees despite his occupancy violates both the documents governing his mortgage and HUD regulations, and increases his indebtedness. [*Id.*, ¶¶ 26–28, 44.] Stankiewicz brings

claims against Defendant on behalf of himself and others similarly situated for breach of contract (Count I); unjust enrichment in the alternative (Count II); and violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2 (Count III).  [*Id.*, ¶¶ 34–64.]

Stankiewicz has defined two national classes and an Illinois sub-class for purposes of his class action claims.  For Count I, Stankiewicz defines the putative national class as:  "All persons who (1) within ten years prior to the filing of this foreclosure action, (2) had an FHA loan with Nationstar that was in default, (3) occupied the subject property during default, and (4) were charged inspection fees by Nationstar while still occupying the property."  [*Id.*, ¶ 29(A).]  For Count II, Stankiewicz defines the putative national class as:  "All persons who (1) within five years prior to the filing of this foreclosure action, (2) had an FHA loan with Nationstar that was in default, (3) occupied the subject property during default, and (4) were charged inspection fees by Nationstar while still occupying the property."  [*Id.*, ¶ 29(B).]

### D.    The D.C. Action

In December 2016, before the <u>Nicholson</u>, <u>Tolford</u>, and <u>Stankiewicz</u> Actions were filed, two other plaintiffs brought an analogous class action lawsuit against Defendant in the Superior Court of the District of Columbia. This case was removed to the United States District Court for the District of Columbia in January 2017.  See *Hoggard v. Nationstar Mortgage LLC*, 17-cv-99 (D.D.C.) (the "D.C. Action").  This lawsuit relates to inspection fees charged in connection with reverse mortgages serviced by Defendant.  Specifically, the D.C. Action plaintiffs allege that Defendant (doing business as Champion Mortgage Company) declared them in default on their reverse mortgage loans specifically for failing to return an Annual Occupancy Certification form. See D.C. Action Compl., ¶¶ 53, 66.  According to these plaintiffs, this action violated the terms of their loan agreements.  *Id.*, ¶¶ 2–3.  Moreover, after declaring them in default on their

mortgages, Defendant started assessing occupancy inspection fees to the balance of their loans each month, despite their obvious occupancy of the subject properties. *Id.*, ¶¶ 55, 69. The D.C. Action plaintiffs allege that Defendant has a practice of doing this and profiting off of the reverse mortgage loan balances that have been inflated by the excessive home inspection fees. *Id.*, ¶¶ 5–9. These plaintiffs bring claims against Defendant on behalf of themselves and others similarly situated for breach of contract; breach of the covenant of good faith and fair dealing; violation of the D.C. Mortgage Lender and Broker Act; violation of D.C. Consumer Protection Procedures Act; violation of Florida Mortgage Lending Law; violation of the Florida Deceptive and Unfair Trade Practices Act; and unjust enrichment. *Id.*, ¶¶ 89–140. The D.C. Action plaintiffs also define both a nationwide class and state-specific sub-classes for their class claims. They define their nationwide class as follows: "All residents of the United States of America who had a HECM loan serviced by Champion Mortgage and whose loans were declared in default for failure to return an Annual Occupancy Certification form and whose accounts were assessed occupancy inspection fees on a monthly basis." *Id.*, ¶ 79. Since the D.C. Action was filed, the parties have engaged in discovery and contested discovery motion practice. [See <u>Stankiewicz</u> Action, 21, at 3.]

Currently before the Court are motions to stay filed by Defendant in the <u>Nicholson</u> Action [24], the <u>Tolford</u> Action [23], and the <u>Stankiewicz</u> Action [18] in favor of the D.C. Action as the first-filed case.

## II. Legal Standard

### A. The First-to-File Rule

Courts in this district have recognized that when two related cases are pending in separate federal courts, either of those courts may exercise its inherent power to stay the proceedings

before it in deference to the related action. See *GE Bus. Fin. Servs. Inc. v. Spratt*, 2009 WL 1064608, at *1 (N.D. Ill. Apr. 20, 2009); *Whirlpool Fin. Corp. v. Metropolis Capital Grp.*, 1991 WL 212112, at *3 (N.D. Ill. Oct. 7, 1991). Indeed, this Court has a "duty * * * to avoid duplicative litigation in more than one federal court." *Whirlpool Fin. Corp.*, 1991 WL 212112, at *3 (citing *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817 (1976)). Therefore, the Seventh Circuit not surprisingly has advised that "[a] district court has 'an ample degree of discretion' in deferring to another federal proceeding involving the same parties and issues to avoid duplicative litigation." *Trippe Mfg. Co. v. American Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995).

When duplicative actions are filed in different federal courts, "the general rule favors the forum of the first-filed suit." *Schwarz v. Nat'l Van Lines, Inc.,* 317 F. Supp. 2d 829, 832 (N.D. Ill. 2004). "[D]istrict courts normally stay or transfer a federal suit for reasons of wise judicial administration whenever it is duplicative of a parallel action already pending in another federal court." *GE Bus. Fin. Servs. Inc.*, 2009 WL 1064608, at *2 n.1.

However, the presumption in favor of the first-filed suit is "not absolute." *MLR, LLC v. U.S. Robotics Corp.*, 2003 WL 685504, at *1 (N.D. Ill. Feb. 26, 2003); *Trippe Mfg.*, 46 F.3d at 629 ("[t]his circuit does not rigidly adhere to a 'first-to-file' rule"); *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005) (stating that exceptions to the first-filed rule are not rare). As the Seventh Circuit has explained, "[n]o mechanical rule governs the handling of overlapping cases," and therefore "the judge hearing the second-filed case may conclude that it is a superior vehicle and may press forward." *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 838 (7th Cir. 1999). Nevertheless, where deference to the first-filed action is consistent with "considerations of judicial and litigant economy, and the just and effective disposition of

disputes," the first-to-file rule provides courts seeking to avoid duplicative litigation with some guidance. *MLR, LLC*, 2003 WL 685504, at *1 (citation omitted); see also *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (favoring first-filed action is appropriate where doing so constitutes "wise judicial administration").

### B. Motion to Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In deciding whether to enter such a stay, courts consider the following factors: "(i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009) (citation omitted). "[I]f there is even a fair possibility that the stay * * * will work damage to some one else," the party seeking the stay "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255.

### III. Analysis

Defendant argues that a stay in favor of the D.C. Action is appropriate in the <u>Nicholson</u> Action, the <u>Tolford</u> Action, and the <u>Stankiewicz</u> Action based on the first-to-file rule. Specifically, in each respective action, Defendant argues that these cases should be stayed because the D.C. Action was filed first; the parties in the D.C. Action and the instant cases are substantially similar; and the issues in the D.C. Action and the instant cases are substantially similar.

The Court will first address whether the first-to-file rule applies to these currently-pending actions.  Because the Court concludes that it does apply, the Court next addresses the propriety of entering a stay in these cases.  In the final analysis, the D.C. Action may streamline the issues and reduce the burden of duplicative litigation on the courts.  Accordingly, the Court will enter a stay in each of these three actions.

A.    **The First-to-File Rule**

The first-to-file rule only grants district courts discretion to dismiss, transfer, or stay a second-filed case when the actions that have been filed in separate federal courts are sufficiently duplicative.  See *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 888–89 (7th Cir. 2012); *Serlin*, 3 F.3d at 223; *Rudich v. Metro Goldwyn Mayer Studio, Inc.*, 2008 WL 4691837, at *3 (W.D. Wis. Oct. 22, 2008).  "District courts are accorded 'a great deal of latitude and discretion' in determining whether one action is duplicative of another."  *Serlin*, 3 F.3d at 223 (quoting *Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 572 F. Supp. 1210, 1213 (N.D. Ill. 1983)).  Generally, however, "a suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions."  *Id.* (internal quotation marks and citation omitted).  In other words, the first-to-file rule may counsel staying a subsequently-filed action if the parties, claims, and available relief "substantially overlap" between the two actions, even if they are not identical.  See *Humphrey v. United Healthcare Servs., Inc.*, 2014 WL 3511498, at *2 (N.D. Ill. July 16, 2014); *Preci-Dip, SA v. Tri-Star Elect. Int'l, Inc.*, 2008 WL 5142401, at *2 (N.D. Ill. Dec. 4. 2008); see also *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015) (substantially similar parties and issues in two cases may trigger the first-to-file rule); *Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F. Supp.

2d 686, 689–90 (E.D. Tenn. 2005) (to apply the first-to-file rule, parties and issues need only substantially overlap).

### 1. The D.C. Action Was Filed First

Turning to the chronology of each of these actions, the D.C. Action does qualify as "first-filed." The first complaint in the D.C. Action was filed in state court on December 9, 2016, and removed to federal court on January 13, 2017. See D.C. Action, ECF No. 1. The complaint in the <u>Nicholson</u> Action was filed on February 22, 2017. [See <u>Nicholson</u> Action, 3.] The complaint in the <u>Tolford</u> Action was filed in state court on October 27, 2017, and removed to federal court on December 4, 2017. [See <u>Tolford</u> Action, 1.] Finally, the <u>Stankiewicz</u> Action was filed in state court on March 29, 2018, and removed to federal court on April 30, 2018. [See <u>Stankiewicz</u> Action, 1.] Because all three actions filed in this district came after the D.C. Action, the D.C. Action qualifies as the first-filed case.

### 2. The Parties Substantially Overlap

The Court will next consider the similarity of the parties in these actions to the parties in the D.C. Action. When comparing the similarity of the parties in two putative class actions, the focus of the substantially similar inquiry is on the putative class members rather than the named plaintiffs themselves. See *Guill v. Alliance Res. Partners, L.P.*, 2017 WL 1132613, at *3 (S.D. Ill. Mar. 27, 2017); *Humphrey*, 2014 WL 3511498, at *3; *Askin v. Quaker Oats Co.*, 2012 WL 517491, at *4 (N.D. Ill. Feb. 15, 2012) (collecting cases and concluding that the proposed class members are the proper focus of this inquiry); see also *Wright v. Walden Univ., LLC*, 2017 WL 1435717, at *2 (D. Minn. Apr. 21, 2017) ("When deciding whether two proposed class actions are substantially similar, the court does not look at the residency or identity of the named plaintiffs but how the classes are defined.").

### a. The <u>Nicholson</u> Action

The parties substantially overlap between the D.C. Action and the <u>Nicholson</u> Action. The Defendant is identical in each action: Nationstar Mortgage LLC of Delaware, doing business as Champion Mortgage Company. While the named plaintiff is obviously different in each case, there is substantial overlap between the proposed classes. Nicholson has defined her putative nationwide class[2] to include (1) all U.S. residents; (2) with a reverse mortgage serviced by Defendant doing business as Champion; (3) whose accounts were assessed property inspection fees; (4) for which the resident received no prior notice. [<u>Nicholson</u> Action, 3, ¶ 55.] Moreover, Nicholson's complaint makes clear that borrowers in default make up the universe of potential class members who would be assessed these inspection fees. [See *id.*, ¶¶ 8–9, 22.] Plaintiffs in the D.C. Action have defined their putative nationwide class to include (1) all U.S. residents; (2) with a reverse mortgage serviced by Defendant doing business as Champion; (3) whose loans were declared in default for failure to return an Annual Occupancy Certification form; and (4) whose accounts were assessed occupancy inspection fees on a monthly basis. D.C. Action Compl., ¶ 79.

While these two putative classes are not identical, they do substantially overlap. Any borrower with a reverse mortgage serviced by Defendant who was found in default for failure to return an Annual Occupancy Certification, and was charged monthly inspection fees without receiving prior notice of those fees, would fall into both classes. Although Defendant has not expressly delineated how many borrowers would fall into both putative classes, the class definitions themselves demonstrate that at least some of the same individuals would be included

---

[2] State sub-classes have been defined in all relevant actions. Because most claims in the <u>Nicholson</u> Action, <u>Tolford</u> Action, <u>Stankiewicz</u> Action, and D.C. Action are brought on behalf of the putative nationwide classes, however, for purposes of this analysis the Court will focus on overlap between the nationwide classes defined in each of these cases.

in both.  This is sufficient to consider the plaintiffs in each action substantially similar.  See

*Moore v. Morgan Stanley & Co, Inc.*, 2007 WL 4354987, at *2 (N.D. Ill. Dec. 6, 2007) (staying

case where, although the proposed class in the first-filed case would not include some of the

named plaintiffs in the second-filed case, "it is readily apparent that twelve of the fourteen

named plaintiffs here are members of the proposed class in [the first-filed case]"); see also

*Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1296 (N.D. Cal. 2013)

(transferring case under first-to-file rule where both putative class actions sought to represent "at

least some of the same individuals"); *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142,

1148 (E.D. Cal. 2010) ("[T]he proposed classes for the collective actions are substantially similar

in that both classes seek to represent at least some of the same individuals."); *Martin v.

Medicredit, Inc.*, 2016 WL 6696068, at *4–5 (E.D. Mo. Nov. 15, 2016) (declining to apply the

first-to-file rule where the putative classes described in each case were significantly different);

*Peterson v. Aaron's, Inc.*, 2015 WL 224750, at *2 (N.D. Ga. Jan. 15, 2015) (finding a significant

overlap between putative classes where proposed class in first-filed case was a subset of the

second-filed case's proposed class).  Furthermore, another federal court has already found that a

putative class identical to Nicholson's was substantially similar to the D.C. Action's putative

class because "the classes of homeowners who failed to return an occupancy form and who did

not receive prior notification of their inspections are not mutually exclusive."  *Ray v. Nationstar

Mortgage LLC of Del.*, 2018 WL 1100897, at *2 (M.D. Ala. Feb. 9, 2018), report and

recommendation adopted, 2018 WL 1093318 (M.D Ala. Feb. 28, 2018).  Thus, the parties are

substantially similar in the <u>Nicholson</u> Action and the D.C. Action.

**b.**      **The <u>Tolford</u> Action**

There is also substantial overlap between the parties in the <u>Tolford</u> Action and the D.C. Action. Both actions name the same Defendant: Nationstar Mortgage LLC, doing business as Champion Mortgage Company. And the putative class in the <u>Tolford</u> Action substantially overlaps with the putative class in the D.C. Action. The proposed national classes in the <u>Tolford</u> Action consists of (1) all individuals in specified time periods; (2) who had an FHA loan or reverse mortgage with Defendant, doing business as Champion, that was in default; (3) who occupied the subject property during default; and (4) who were charged inspection fees by Defendant while still occupying the property. [<u>Tolford</u> Action, 34, ¶ 35.] This is substantially similar to the proposed class in the D.C. Action. The main difference between the two classes is that in the D.C. Action, only one event triggering default defines class membership: failure to return an Annual Occupancy Certification. By contrast, in the <u>Tolford</u> Action, there is no specific trigger for default that defines class membership. Still, the two classes are not mutually exclusive and substantial overlap between the two exist because at least some of those people who would fall into Tolford's class would do so because of a failure to return the occupancy certificate. See *Ray*, 2018 WL 1100897, at *2 (parties are substantially similar when two classes are "not mutually exclusive"); see also *Moore*, 2007 WL 4354987, at *2; *Peterson*, 2015 WL 224750, at *2 (a stay may be appropriate when one proposed class is a subset of another proposed class). Therefore, the parties in both actions are substantially similar.

### c. The <u>Stankiewicz</u> Action

Finally, substantial overlap exists between the parties in the <u>Stankiewicz</u> Action and the D.C. Action. Stankiewicz names Nationstar as a Defendant in this action, which is the same defendant named in the D.C. Action (although, because Stankiewicz has not limited his claims to reverse mortgages, the Champion division of Defendant is not specifically named). The putative

classes in Stankiewicz are almost identical to the <u>Tolford</u> Action putative nationwide classes, which the Court has already found are substantially similar to the D.C. Action. They include (1) all individuals in specified time periods; (2) who had an FHA loan with Defendant that was in default; (3) who occupied the subject property during default; and (4) who were charged inspection fees by Defendant while still occupying the property. [<u>Stankiewicz</u> Action, 1-1, ¶ 29.] This is a broader proposed class because the <u>Stankiewicz</u> Action is not limited to those borrowers with reverse mortgages serviced by Defendant, but instead includes borrowers with all other types of mortgages serviced by Defendant as well. Still, as with the <u>Tolford</u> Action, this proposed class and the D.C. Action proposed class are not mutually exclusive. Rather, the D.C. Action proposed class is a subset of the <u>Stankiewicz</u> Action proposed class, and substantial overlap between the two exists. See *Ray*, 2018 WL 1100897, at *2; *Peterson*, 2015 WL 224750, at *2. Therefore, the parties in both actions are substantially similar.

### 3. The Issues and Available Relief Substantially Overlap

As with the parties comparison, there need not be complete congruence of the issues among cases to invoke the first-to-file rule: there only needs to be substantial overlap of the issues between them for the rule to apply. See *Humphrey*, 2014 WL 3511498, at *2 (claims need not be identical to satisfy the same issues requirement).

### a. The <u>Nicholson</u> Action

Here, there is substantial overlap in the issues being litigated both in the <u>Nicholson</u> Action and in the D.C. Action. Nicholson alleges that Defendant, when reverse mortgage borrowers go into default for any reason, assesses property inspection fees in ways which violate both the mortgage contract and governing federal HUD regulations. [<u>Nicholson</u> Action, 3, ¶¶ 22–39.] Plaintiffs in the D.C. Action allege that Defendant, after declaring borrowers in

default for failing to execute an Annual Occupancy Certification, assess multiple property inspection fees in violation reverse mortgage loan documents and federal HUD guidance. D.C. Action Compl., ¶¶ 33–45, 69. Both actions focus on Defendant's actions in assessing fees for home inspections of reverse mortgage borrowers who have supposedly defaulted in some way, meaning the gravamen of the allegations is nearly identical in both cases. See *Humphrey*, 2014 WL 3511498, at *2 (finding that claims in two cases were essentially identical when they were "based on the same core factual allegations"); *Wallerstein*, 967 F. Supp. 2d at 1297 (transfer appropriate under the first-to-file rule where the "thrust" of both lawsuits was identical); *Askin*, 2012 WL 517491, at *3–4 (claims underlying separate actions were "substantially the same" where they were based on the same underlying facts); *Fuller*, 370 F. Supp. 2d at 690 (staying second-filed case, even though the second-filed case brought an additional claim, because both actions contested the same issue). A comparison of the alleged common questions of law for the class action allegations in each case also confirms that the issues in each case substantially overlap. See, *e.g.*, [Nicholson Action, 3, ¶ 61(a)] (listing as a common question for putative class members whether Defendant "[o]rdered and assessed fees for repeated, frequent property inspections without prior notice to the reverse mortgagor or regard to their reasonableness or necessity"); D.C. Action Compl., ¶ 85(e) (listing as a common question for putative class members whether Defendant "failed to provide Plaintiffs and the class members notice of each occupancy inspection prior to conducting the inspection and assessing an inspection fee").

Nicholson argues that the cases involve different issues because the D.C. Action alleges violations of the D.C. Consumer Protection Procedures Act, the D.C. Mortgage Lender and Broker Act, and a breach of the covenant of good faith and fair dealing. [Nicholson Action, 28, at 8–9.] The Nicholson Action does not include these claims. However, the presence of

additional claims in the D.C. Action does not mean the two cases are not similar enough to trigger the first-to-file rule. See *Askin*, 2012 WL 517491, at *4 ("As long as the underlying facts are the same * * * the fact that the two complaints allege violations of different state laws is not enough to render them substantially dissimilar for purposes of the first-to-file analysis.") *Peterson*, 2015 WL 224750, at *3 ("Indeed, finding an insubstantial overlap because of the fact that the claims are asserted under different laws would defeat the judicial efficiency rationale undergirding the first-filed rule.") (internal alterations and citation omitted). Nicholson brings claims for breach of contract, unjust enrichment, and negligence in the alternative. The D.C. Action plaintiffs also bring claims for breach of contract and unjust enrichment, along with other additional claims. The relief available in both cases is the same: both sets of plaintiffs seek class certification, damages, prejudgment interest, and attorneys' fees. See [Nicholson Action, 3, at 17–18]; D.C. Action Compl., at 28.

Nicholson also argues that the issues in these cases differ because the D.C. Action is focused on events of default precipitated by the failure to return occupancy certification forms, while her action focuses on the failure to provide notice of inspections to reverse mortgage borrowers. [Nicholson Action, 28, at 8–9.] But some differences in the way the inspection fee issue arises does not change the fact that the propriety of Defendant's inspection fees charged on defaulted reverse mortgages forms the core allegation in both cases. See *Ray*, 2018 WL 1100897, at *3 ("The court is persuaded that sufficient similarity is present here * * * the core allegation is the same in both lawsuits: that Nationstar assessed improper fees for property inspections to its reverse mortgage customers.").

Because these claims and requested relief are all based on the same core factual allegations, they are sufficiently similar for purposes of the first-to-file rule. See *Askin*, 2012 WL 517491, at *4.

### b.     The <u>Tolford</u> Action

The issues in the <u>Tolford</u> Action similarly overlap with the issues in the D.C. Action. Tolford alleges that, after he defaulted on his reverse mortgage, Defendant conducted numerous inspections of his property even though Tolford continued to occupy it, in violation of the mortgage and relevant HUD regulations.  [<u>Tolford</u> Action, 34, ¶¶ 21–33.]  Tolford's claims include breach of contract, unjust enrichment, and violation of the Illinois Consumer Fraud Act. The D.C. Action plaintiffs similarly challenge Defendant's assessment of allegedly improper inspection fees on reverse mortgages that are purportedly in default and bring claims for breach of contract and unjust enrichment.  As discussed in connection with the <u>Nicholson</u> Action, *supra*, the presence of other claims in the D.C. Action does not render the issues in the two cases dissimilar.  See *Askin*, 2012 WL 517491, at *4; *Ray*, 2018 WL 1100897, at *3.  The common questions of fact and law listed in each complaint similarly demonstrate the overlap in issues between the two cases.  See, *e.g.*, [<u>Tolford</u> Action, 34, ¶ 37(a)] (listing common factual question for class as "[w]hether Champion's conduct in charging inspection fees constitutes breach of contract."); D.C. Action Compl., ¶ 85(i) (listing as common question of fact for class as "[w]hether Defendant breached its contract with Plaintiffs and the class members by declaring their loans in default and assessing occupancy inspection fees and foreclosure-related fees as alleged herein.")  Plaintiffs in both the <u>Tolford</u> Action and the D.C. Action seek similar relief of class certification, damages, prejudgment interest, and attorneys' fees.  See [<u>Tolford</u> Action, 34,

at 15]; D.C. Action Compl., at 28.  In sum, the issues and the available relief do not materially differ between the Tolford Action and the D.C. Action.

### c.      The **Stankiewicz** Action

The Court also finds that the issues and available relief do not materially differ between the Stankiewicz Action and the D.C. Action for the same reasons previously discussed in connection with the Nicholson and Tolford Actions.   The Stankiewicz Action similarly challenges Defendant's practices of assessing inspection fees after a borrower purportedly defaults on his mortgage.  This is the same core factual allegation at issue in the D.C. Action. The fact that Stankiewicz brings a claim under Illinois law, while the D.C. Action plaintiffs bring claims under D.C. and Florida law, does not change the analysis.  See *Askin*, 2012 WL 517491, at *4 ("As long as the underlying facts are the same, as is the case here, the fact that the two complaints allege violations of different state laws is not enough to render them substantially dissimilar for purposes of the first-to-file analysis.").  Stankiewicz also requests the same relief as plaintiffs in the D.C. Action, the Nicholson Action, and the Tolford Action.  As such, the Court also finds that the issues in the Stankiewicz Action are substantially similar to the issues in the D.C. Action.

### B.      A Stay is Appropriate

Even when the first-to-file rule applies, as it does to each of these three pending actions, district courts have ample discretion in determining whether a stay in favor of the first-filed case is appropriate.  *Trippe Mfg.*, 46 F.3d at 629.  The Court will therefore consider whether a stay in these three actions will (1) unduly prejudice or tactically disadvantage the non-moving plaintiffs; (2) simplify the issues in question and streamline the trial; and (3) reduce the burden of litigation on the parties and on the court.  *Pfizer*, 640 F. Supp. 2d at 1007.  The Court will consider the

Nicholson Action, the Tolford Action, and the Stankiewicz Action together for purposes of this analysis, as the arguments the parties make in each case are largely identical.

First, none of these plaintiffs is likely to be unduly prejudiced or disadvantaged by a stay during the pendency of the D.C. Action. Although none of the named plaintiffs in these actions is likely eligible to participate as a class member in the D.C. Action, this counsels only against the more drastic remedies of dismissal or transfer of the actions. See *Clendenen v. Steak N Shake Operations, Inc.*, 2017 WL 1968604, at *2 (C.D. Ill. May 12, 2017) (refusing to dismiss second-filed lawsuit where the plaintiff would be ineligible to participate directly in first-filed lawsuit); *Moore*, 2007 WL 4354987, at *2 (where some plaintiffs in second-filed case have different claims from the plaintiffs in first-filed case, "[t]his situation militates in favor of a stay, so they are not prejudiced by dismissal"). In contrast to a dismissal or transfer, staying the case while another class action addresses many of the same issues at play in these three actions will not foreclose relief being available for the named plaintiffs Nicholson, Tolford, and Stankiewicz once the D.C. Action progresses to a point where the stay can be lifted.

Second, the Court is persuaded that a stay may simplify the litigation in each of these three actions. The D.C. Action deals with many of the same factual issues as the Nicholson, Tolford, and Stankiewicz Actions. A resolution of the D.C. Action will not eliminate the need for any further proceedings in this action because of the presence of Illinois sub-classes and Illinois law claims in these actions that will not be addressed by the D.C. court. But a resolution regarding the meaning of Defendant's mortgage contracts and relevant HUD regulations as they relate to property inspection fees very well may streamline the issues remaining in these cases. The D.C. Action may, for example, resolve whether Defendant's practices regarding inspection

fees are lawful and therefore streamline the claims in these three actions by clarifying those issues.

Third, a stay would preserve the resources of the parties and reduce the burden of litigation on the Court. These actions are substantially similar to the D.C. Action and, as discussed, a decision in the D.C. Action may materially reduce the issues to be decided in the Nicholson, Tolford, and Stankiewicz Actions. See *Pfizer*, 640 F. Supp. 2d at 1008. At the moment, it appears that the D.C. Action will be at least informative on the issues at play in the these three actions, even if it ultimately does not dispose of any need for further proceedings in these cases. Of course, the Court cannot anticipate the course of litigation in any trial court. The D.C. Action may, through dispositive motions or another procedural mechanism, shift its focus in a way that materially departs from the issues at play in the cases pending in this Court (for example, the annual occupancy certification issue as it relates to borrowers' default may come to dominate the D.C. Action). If the D.C. Action takes such a course, the Court will entertain a motion filed by any party to lift the stay.

The Court discerns no other circumstances that would weigh against a stay of these actions in favor of the D.C. Action. Nicholson has made several additional arguments that it would be inequitable to stay her case in favor of the D.C. Action: specifically, Nicholson argues that that the D.C. Action is no farther along than her action, and that Defendant has engaged in bad faith "forum shopping" that necessitates denying its request for a stay. [See Nicholson Action, 28, at 5–6, 9–10.] However, regarding the relative status of the Nicholson Action and the D.C. Action, it does not appear that the Nicholson Action proceeded much farther than the D.C. Action before the motion for a stay was filed. And, while Nicholson argues that Defendant has engaged in bad faith by moving for a stay, the Court discerns no support for these

allegations. All Nicholson points to is the timing of the Defendant's motion for a stay in her case, which was filed after some discovery had already taken place. But this does not, by itself, indicate bad faith or forum shopping. Without more, the Court cannot say that Defendant has engaged in conduct that would make a stay of a substantially similar case in favor of a first-filed case inequitable.

In sum, the Court concludes that a stay is appropriate in the <u>Nicholson</u> Action, the <u>Tolford</u> Action, and the <u>Stankiewicz</u> Action pending the outcome of the D.C. Action. Staying these cases will not unduly prejudice any plaintiff, and a stay will potentially streamline the issues for trial and avoid conflicting decisions in two different courts on the same issues surrounding Defendant's inspection fee practices for defaulted mortgages.

## IV. Conclusion

For the reasons explained above, each of Defendant's motions to stay is granted. The <u>Nicholson</u> Action, the <u>Tolford</u> Action, and the <u>Stankiewicz</u> Action are stayed pending the outcome of the first-filed action currently pending in the D.C. District Court. The parties are directed to submit status reports to the Court on the D.C. Action every 90 days, beginning September 1, 2018.

Date: July 6, 2018

_____
Robert M. Dow, Jr.
United States District Judge